UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CASS JV, LLC., et al.                                                                                    PLAINTIFFS

v.                                                                                   NO. 3:12-CV-00359-CRS-DW

HOST INTERNATIONAL, INC., et al.                                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendants, Host International, Inc. ("Host"), George William Tinsley, Sr. ("Tinsley"), the Tinsley Family Concessions, Inc. ("TFC"), and Host–TFC–RSL, LLC ("Host-TFC") (collectively, "Defendants"), for summary judgment as to all counts of the Supplemental and Amended Complaint of the plaintiffs, CASS JV, LLC ("CASS") and Charles Nathaniel Alexander ("Alexander") (collectively, "Plaintiffs"). (DN 40). Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the court concludes that there are no material issues of fact in dispute. For the reasons set forth below, the court will grant Defendants' motion for summary judgment (DN 40).

### I.

This case involves a joint venture partnership formed between Host and CASS for the purpose of operating food and beverage concession facilities at the Louisville International Airport (the "Airport"). The following facts are undisputed.

On October 1, 2000, Host entered into a Food and Beverage Concession Agreement with the Regional Airport Authority of Louisville and Jefferson County ("LRAA") for the operation

of concessions at the Airport (the "2000 Concession Agreement"). The 2000 Concession Agreement had a term of ten years, and would terminate no later than September 30, 2010.

Pursuant to that agreement, Host was required to partner with a certified Airport Concession Disadvantaged Business Enterprise ("ACDBE") to operate the concessions at the Airport. Host was allowed to assign the 2000 Concession Agreement to a joint venture created for that purpose. It chose to partner with CASS, an ACDBE whose sole member is Alexander.[1] On December 30, 2000, Host entered into a Joint Venture Agreement with CASS which resulted in the formation of the CS Host Joint Venture. The Joint Venture Agreement provided that the CS Host Joint Venture would terminate no later than September 30, 2010 or, in any event, upon termination of the 2000 Concession Agreement.[2]

By a letter dated April 27, 2009, counsel for Host informed CASS that Host could not "in good faith consider any future relationship with Mr. Alexander or any company in which he has an ownership interest." (DN 40-11). Host indicated that it "was very concerned about comments that Mr. Alexander made during a videoconference with Host employees[.]" (*Id.*). Host apparently was concerned about a statement that Alexander made in which he indicated that he bribed public officials in connection with a price increase for the Cincinnati Airport, where Alexander and Host were engaged in an additional joint venture for airport concessions. Alexander vehemently denied making any such statements. (DNs 40-12, p. 3, 40-14, p. 3). Nevertheless, in a separate letter dated May 11, 2009, Host's counsel stated that "[i]f Host

---

[1] Sarah Jane Schaaf was also a member of CASS at the time it partnered with Host. Alexander subsequently purchased Schaaf's interest and is now the sole member of CASS.
[2] The Joint Venture Agreement provided for additional events that would cause the CS Host Joint Venture to terminate before the conclusion of the term provided for in the Agreement, none of which are relevant to the resolution of the present motion. The parties also extended the 2000 Concession Agreement's term to October 31, 2010, allegedly due to TFC's difficulties in obtaining an ACDBE certification. In return, CASS received an "extension fee" of $75,000. (DN 1-7).

responds to any future [request for proposals at the Airport], Cass [*sic*] JV, LLC will not be a part of that response." (DN 40-13).

The dispute that is the subject of this litigation arose when Host submitted a bid to the LRAA for the concession agreement that would commence in 2010, following the expiration of the 2000 Concession Agreement (the "2010 Concession"). Rather than partnering with CASS for the 2010 Concession, Host decided to partner with TFC.

CASS originally filed this action in Jefferson County Circuit Court against Host and GW Tinsley, LLC on April 22, 2011. In the complaint, CASS alleged that it contributed significant additional capital to the CS Host Joint Venture pursuant to an oral contract with Host, in exchange for which Host agreed to bid on the 2010 Concession with CASS as its ACDBE partner. CASS alleged that it made this capital contribution with the intent of generating goodwill so that the Airport would grant the 2010 Concession to the CS Host Joint Venture. CASS argued that it was damaged when Host decided not to partner with it for the 2010 Concession.

CASS subsequently amended its complaint to add Alexander as a plaintiff and substituted George William Tinsley, Sr., TFC, and Host-TFC as defendants. The Supplemental Amended Complaint asserts the following claims against Host: (1) breach of fiduciary duty (Count I); (2) breach of contract (Count II); (3) breach of oral contract (Count III); (4) unjust enrichment (Count IV); (5) violation of the Kentucky Civil Rights Act (Count VI); (6) damages under KRS § 344.450 (Count VII); and (7) a claim for punitive damages (Count VIII). (Supplemental Am. Compl., DN 1-10). Plaintiffs also bring claims against Host-TFC for unjust enrichment (Count IV), and Tinsley and TFC for conspiracy and aiding and abetting breach of fiduciary duty (Count V) and punitive damages (Count VIII). (*Id.*).

Defendants removed the case to this court based on diversity jurisdiction. Having denied Plaintiffs' motion to remand by a prior Memorandum Opinion and Order (DN 23), we will now address whether Defendants are entitled to summary judgment on each count of the Supplemental and Amended Complaint.

## II.

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

**III.**

Defendants contend that they are entitled to summary judgment on each count of the Supplemental and Amended Complaint. We address these claims below, applying the substantive law of Kentucky in accordance with the terms of the parties' agreement. (DN 1-2, § 9.10).

**A. Counts I and II: Breach of Fiduciary Duty and Breach of Contract By Host**

Plaintiffs allege that Host breached the terms of the Joint Venture Agreement, as well as certain fiduciary duties that it owed to Plaintiffs by virtue of the CS Host Joint Venture.

A joint venture is a special type of partnership, which Kentucky courts have defined as "an informal association of two or more persons, partaking of the nature of a partnership, usually, but not always, limited to a single transaction in which the participants combine their money, efforts, skill, and knowledge for gain, with each sharing in the expenses and profits or losses." *Roethke v. Sanger*, 68 S.W.3d 352, 364 (Ky. 2001) (quoting *Eubank v. Richardson*, 353 S.W.2d 367, 369 (Ky. 1962)). Because a joint venture is treated as an "informal partnership," it is governed by principles of partnership law, in that venture partners owe fiduciary duties to one another and to the joint venture. *Abbott v. Chesley*, 413 S.W.3d 589, 603–604 (Ky. 2013); *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (quoting *Security Trust Co. v. Wilson*, 210 S.W.2d 336, 338 (Ky. 1948)) (finding that a fiduciary relationship arises "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence").

Thus, by virtue of the CS Host Joint Venture and Joint Venture Agreement, CASS and Host were fiduciaries of one another[3] and also owed duties of good faith and fair dealing, as that covenant is implied into every contract under Kentucky law. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991) (citations omitted). Therefore, the issue in this action is whether Host breached its fiduciary and contractual obligations to CASS when it bid on the 2010 Concession Agreement with an ACDBE other than CASS.

A claim for breach of fiduciary duty requires that a plaintiff allege that "(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach." *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009) (quoting *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 n.15 (Ky. Ct. App. 2000)). "The scope of the fiduciary duty has been variously defined as one requiring utter good faith or honesty, loyalty or obedience, as well as candor, due care, and fair dealing." *Lach v. Man O'War, LLC*, 256 S.W.3d 563, 569 (Ky. 2008) (quoting *Anthony v. Padmar, Inc.*, 465 S.E.2d 745, 752 (S.C. Ct. App. 1995)). Similarly, a claim for breach of contract requires proof of the following elements: (1) the existence of a contract; (2) breach of that contract; and (3) damages stemming from the breach. *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. 2009) (citation omitted).

Plaintiffs allege that Host owed CASS the duties of good faith, honesty, loyalty, candor, and fair dealing, and that it breached these duties and certain of its contractual obligations when

---

[3] The Joint Venture Agreement, by its own terms, imposed fiduciary duties on CASS and Host as principals of the enterprise. Section 8.8 of the Agreement, entitled "Principals Accountable as a Fiduciary," provides as follows:

> Every Principal must account to the Joint Venture and the other Principals for any benefit, and hold as trustee for the Joint Venture and the other Principals any profits derived by it . . . from any transaction connected with the formation, conduct or liquidation of the Joint Venture or from any use by it of the Joint Venture's property other than for Joint Venture business or from any Competing Business . . . .

(DN 1-2, § 8.8).

it did the following: submitted a bid for and subsequently obtained the 2010 Concession; used property of the joint venture to obtain a profit (*i.e.*, the 2010 Concession) and failed to account for the profit; competed with the joint venture; failed to act in the joint venture's best interests by secretly submitting a bid for and obtaining the 2010 Concession; knowingly misappropriated an opportunity of the joint venture; and acted contrary to the joint venture's best interests. (DN 1-10, ¶¶ 101–105).

We first look to the language of the Joint Venture Agreement to determine whether Host breached any express fiduciary or contractual duties. The Joint Venture Agreement specifically limited its scope by including a "purpose" clause, which is in keeping with Kentucky's understanding of a joint venture as a partnership "limited to a single transaction." *Roethke*, 68 S.W.3d at 364 (quotation omitted). The Agreement defined its purpose as "developing and operating several food and beverage concession facilities at the Airport under a Sublease from Host as Concessionaire, and under any franchise or license agreement entered into by the Joint Venture in connection with a Sublease from Host." (DN 1-2, § 1.1).

Contrary to Plaintiffs' assertions, the language of the "purpose" clause is not ambiguous and the court will accord it its ordinary meaning. *See Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) ("It is well settled that the interpretation of contracts is an issue of law for the court to decide.") (citation omitted); *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 321 (Ky. Ct. App. 2009) (noting that contractual language "is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations") (quotation omitted). The first portion of the "purpose" clause limits the Joint Venture's scope to carrying out the obligations that were imposed on Host pursuant to the 2000 Concession Agreement and Sublease. Thus, it restricts the Joint Venture's purpose to the

development of concessions in the Airport for a ten-year term commencing on October 1, 2000 and terminating no later than September 30, 2010. Contrary to Plaintiffs' assertions, neither the terms of the Joint Venture Agreement nor the 2000 Concession Agreement and Sublease expressly obligate Host to engage in future dealings with CASS beyond the September 30, 2010 termination date. (DN 1-2, § 1.5). Therefore, Defendants did not breach—either contractually or pursuant to their fiduciary duties as joint venturers—the first clause of the "purpose" provision by bidding on the 2010 Concession with TFC because that concession was outside the scope of the Joint Venture Agreement's term.

Plaintiffs, however, argue that the second portion of the purpose clause[4] is ambiguous and could be construed to extend the scope of the CS Host Joint Venture to any franchise or license agreement entered into by CASS or Host in connection with the 2000 Sublease. In Plaintiffs' view, this would include the 2010 Concession. But when this clause is viewed in context, it addresses the fact that as a result of the Joint Venture Agreement, the CS Host Joint Venture becomes a party to any franchise or license agreements that are entered into to advance the CS Host Venture in its operation of Airport concessions. There is no indication that the parties, in including this language, intended to bind themselves to all future dealings involving the Airport. Rather, this language represents an obligation under the contract. In fact, Plaintiffs classified it as such in their complaint. (DN 1-10, ¶¶ 109–11) ("Host had an obligation under the contract to 'obtain all permits, licenses, franchises, and authorizations of whatever nature necessary for the operation of the Joint Venture's business and the ownership of its assets . . .'").

In sum, we find that Host did not breach the "purpose" clause of the Joint Venture Agreement when it bid on the 2010 Concession with TFC. If we were to adopt Plaintiffs'

---

[4] The second portion of the purpose clause addresses the "under any franchise or license agreement entered into by the Joint Venture in connection with a Sublease from Host" language. (DN 1-2, § 1.1).

interpretation of the purpose clause as reaching future concession agreements at the Airport, we would expand the Joint Venture beyond its contemplated scope. As stated above, Kentucky courts define a joint venture as "an informal partnership, existing for a limited purpose and duration." *Abbott*, 413 S.W.3d at 604 (citing *Jones v. Nickell*, 179 S.W.2d 195, 196 (Ky. 1944)). In this instance, the Joint Venture Agreement established the parties' rights and responsibilities under the 2000 Concession Agreement. There is no indication that the parties intended to bind themselves to further dealings beyond the scope of that agreement.

We next address Plaintiffs' argument that Defendants allegedly violated or breached certain fiduciary duties by competing with the CS Host Joint Venture. Under Kentucky law, the duty of loyalty imposes on a partner the "duty to share with the partnership those business opportunities clearly related to the subject of its operations." *Patmon v. Hobbs*, 280 S.W.3d 589, 594 (Ky. Ct. App. 2009) (quoting 59A Am. Jur. 2d Partnership § 295 (2003)). The Joint Venture Agreement, however, explicitly recognized that both Host and CASS would "be engaged in other interests and occupations unrelated to the Joint Venture." (DN 1-2, § 3.9). As such, it provided that

> Any Principal may engage in and have an interest in other business ventures ("Independent Ventures") of every nature and description, independently or with others, except for business ventures which compete, or may compete, in the sole judgment of the Managing Principal, with the Joint Venture.
>
> . . .
>
> No Principal may engage in any business venture at the Airport which is not an Independent Venture (a "Competing Business") unless the Competing Business is conducted by the Joint Venture, or unless the Managing Principal consents in writing signed by its General Counsel.[5]

(*Id.*).

---

[5] The Joint Venture Agreement acknowledged that the parties presently were, or in the future might consider, operating other facilities at the Airport which would not be considered "competing businesses" under the terms of the Joint Venture Agreement. (DN 1-2, § 3.9).

Plaintiffs argue that Host violated this provision when it bid on the 2010 Concession with TFC. Yet, the 2010 Concession was not a "competing business," as that term is defined in the Joint Venture Agreement, because the 2010 Concession would not take effect until the CS Host Joint Venture had terminated. Thus, it would not interfere with the business of the Joint Venture which, by its terms, was established to service the 2000 Concession Agreement. In addition, Host only submitted its bid for the 2010 Concession after it had put Plaintiffs on notice, through its letters sent in April and May 2009, that it would not partner with Plaintiffs in any future Airport concession bids.

Plaintiffs' final argument is that Host breached its fiduciary duties when it misappropriated a business opportunity of the CS Host Joint Venture and improperly used the profits and goodwill generated by the Joint Venture for its benefit to obtain the 2010 Concession. Specifically, Plaintiffs allege that they provided capital to the CS Host Joint Venture with the expectation that such capital would be used to develop the concessions in the Airport and, in turn, create goodwill so as to make the CS Host Joint Venture the frontrunner for the 2010 Concession. According to Plaintiffs, Host used the goodwill created by the CS Host Joint Venture to obtain the 2010 Concession for its own benefit. Plaintiffs allege that this is clearly a breach of Host's fiduciary duty to the CS Host Joint Venture.

Host denies that it breached any such duty and contends that Plaintiffs were obligated to pay the additional capital under Section 2.2 of the Joint Venture Agreement, which gave Host, as the managing principal, the right to request funds from CASS in addition to and beyond its initial capital contribution. (DN 1-2, § 2.2). The Agreement states no condition precedent to the demand for capital, other than Host's providing Plaintiffs with notice of the amount due.[6] (*Id.*).

---

[6] Section 2.2 of the Joint Venture Agreement, entitled "Subsequent Capital Contributions," provides as follows:

Plaintiffs do not dispute that they received a letter, sent by Host on March 26, 2007, in which Host detailed the contributions required of CASS as part of the mid-term improvements to the Airport concessions. (DN 40-8). The letter stated that Host, as the managing principal of the CS Host Joint Venture, was "requesting a capital call in the amount of $345,000 related to the CASS . . . portion of the contractually required mid-term investment at [the Airport]." (*Id.*). In response to this letter, CASS paid the funds to the CS Host Joint Venture. Thus, CASS ostensibly tendered payment of $345,000 pursuant to its obligations under Section 2.2 of the Joint Venture Agreement, and the parties appear to agree that the funds were in fact used for improvements at the Airport.

It is possible that these improvements elevated Host in the eyes of the Airport officials responsible for designating the recipient of the 2010 Concession. Plaintiffs, however, have not shown how this constitutes a breach of duty on Host's part, nor have they raised a genuine factual dispute as to whether Hosted called this capital contribution in bad faith. Rather, the plain language of the Joint Venture Agreement indicates that the parties anticipated that such contributions would be necessary for the operation of the CS Host Joint Venture, under the terms of the 2000 Concession and Sublease. CASS may not have recovered a profit from its capital contribution, but it must be held to the consequences of its bargain with Host to contribute funds upon request for the purpose of Airport Improvements. Thus, Host is entitled to summary judgment on Counts I and II.

---

> In the event that additional capital contributions are required to fund construction or operations of the Joint Venture, the Managing Principal will notify each Principal of the amounts required. Each Principal will contribute additional capital in the same proportion as its ownership interest. . . .

(DN 1-2, § 2.2).

## B. Count III: Breach of Oral Contract by Host

Plaintiffs allege that an oral contract existed between Host and CASS, pursuant to which Host agreed to bid on the 2010 Concession with CASS in exchange for CASS making a capital contribution of $345,000 to the CS Host Joint Venture. This claim essentially mirrors Plaintiffs' breach of contract and fiduciary duty claims, in that Plaintiffs argue that Host breached the oral agreement when it bid for the 2010 Concession with TFC and was awarded the concession on the basis of the goodwill that Plaintiffs had generated.

Host denies that there was an oral contract between the parties relating to the 2010 Concession, and it raises several arguments as to the unenforceability of any alleged oral agreement. Host first argues that the alleged oral contract is unenforceable because it is not supported by consideration. According to Host, the Joint Venture Agreement required CASS to pay the $345,000 capital contribution to the CS Host Joint Venture. It reasons that this capital contribution cannot also serve as consideration for the alleged oral contract because "a promise to do what one is already under obligation to do cannot be a consideration." *Gray v. Greer*, 70 S.W.2d 683, 685 (Ky. 1934) (citations omitted).

Indeed, the unambiguous language of Section 2.2 of the Joint Venture Agreement states that CASS was required to contribute additional capital to the Joint Venture "[i]n the event that . . . [such] contributions are required to fund construction or operations of the Joint Venture[.]" (DN 1-2, § 2.2). CASS further agreed to contribute such capital upon its receipt of notification from the managing principal, *i.e.*, Host. (*Id.*). Accordingly, by virtue of the Joint Venture Agreement, CASS bound itself to make such capital contributions when—or if—it received such a request from Host. Because CASS was already obligated to comply with this

contractual obligation to contribute the funds, it is precluded from arguing that such obligation served as consideration sufficient to support an oral contract between the parties.

Having determined that the alleged oral contract was unsupported by consideration and thus unenforceable, we need not address Host's remaining arguments. Accordingly, Host is entitled to summary judgment on Count III.

### C. Count IV: Unjust Enrichment by Host and Host-TFC

Plaintiffs allege that Host and Host-TFC, the joint venture formed between Host and TFC, were unjustly enriched by CASS's contribution of $345,000 to the CS Host Joint Venture. They also claim that Host and Host-TFC received the benefit of the goodwill generated by the CS Host Joint Venture's capital contribution when they obtained the 2010 Concession.

Defendants, for their part, argue that Plaintiffs' claim for unjust enrichment is barred because a written contract governed CASS's obligation to pay the capital contribution. Indeed, under Kentucky law, "the doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed." *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F. Supp. 1198, 1206 (W.D. Ky. 1995) (quoting *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)).

There is no dispute that an express contract existed between Host and CASS, and that such contract was performed by both parties. Moreover, as discussed above, Host had the option under the Joint Venture Agreement to demand additional capital contributions from CASS beyond the extent of CASS's initial contribution. Because CASS was obligated to make the $345,000 contribution under the express terms of the Joint Venture Agreement, its payment of these funds may not also serve as the basis of a claim for unjust enrichment. Therefore, Host and Host-TFC are entitled to summary judgment on Count IV.

### D. Count V: Conspiracy and Aiding and Abetting Breach of Fiduciary Duty by George Tinsley and TFC

To prevail on a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must prove the following elements: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party "substantial assistance or encouragement"; and (3) the defendant knew that the party's conduct breached a fiduciary duty. *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010) (citations omitted) (applying Kentucky law). Plaintiffs allege that Tinsley and TFC actively usurped CASS's business opportunity and abetted Host in breaching its fiduciary duty under the Joint Venture Agreement. Plaintiffs also claim that Host, Tinsley, and TFC concealed their bid for the 2010 Concession from Plaintiffs.

Defendants argue that this claim must fail because Plaintiffs' underlying claim for breach of fiduciary duty also fails. They cite to a case in which the Kentucky Court of Appeals dismissed a claim for aiding and abetting a breach of fiduciary duty after it determined that the defendant did not owe a fiduciary duty to the plaintiff. *Goodman v. Goldberg & Simpson, P.S.C.*, 323 S.W.3d 740, 746 (Ky. Ct. App. 2009). As explained more fully above, Host did not breach the fiduciary duties it owed to CASS pursuant to the Joint Venture Agreement when it bid for and obtained the 2010 Concession with an ACDBE other than CASS. Moreover, Plaintiffs have not put forward evidence to raise a genuine factual issue as to whether Tinsley or TFC substantially assisted or encouraged Host to breach any such duties, much less conspired with Host to "usurp the opportunity of CASS[.]" (DN 1-10, ¶ 131). *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) ("[M]ere conclusory allegations are not sufficient to withstand a motion for summary judgment.") (citation omitted).

Plaintiffs argue that a ruling on this issue is premature because they have not yet taken the depositions of Tinsley and TFC. However, the initial discovery deadline set forth in this

court's Rule 16 order was December 31, 2013, and Plaintiffs have not yet noticed the depositions of either party. (DN 34). It is not enough that Plaintiffs believe that additional evidence will support their claim. Because Plaintiffs have failed to produce "specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 248, Defendants are entitled to summary judgment on this claim.

### E. Counts VI and VII: Violation of the Kentucky Civil Rights Act by Host

The stated purpose of the KCRA is

> To safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability . . . ; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest which would menace its democratic institutions, to preserve the public safety, health, and general welfare, and to further the interest, rights, and privileges of individuals within the state[.]

KRS § 344.020(b). In the present action, Plaintiffs allege that Host conspired to retaliate against Alexander in violation of KRS §§ 344.280(1) and (5) because Alexander had previously expressed concern regarding Host's treatment of minorities and encouraged minorities "to protect their civil rights in their dealings with Host." (DN 1-10, ¶¶ 134–35).

Though not explicitly stated in the statutory language itself, Kentucky courts have typically applied KRS § 344.280 in the context of the employment relationship. In this regard, a plaintiff must establish, as part of a *prima facie* case of retaliation under KRS § 344.280, that "the defendant took an employment action adverse to the plaintiff." *Brooks v. Lexington–Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991)); *see also Young v. City of Radcliff*, 561 F. Supp. 2d 767, 792 (W.D. Ky. 2008) ("In general, the [KCRA] protects individuals against

discrimination in the employment context and also ensures that no individual may be denied the equal enjoyment of a place of public accommodation, resort or amusement facility."). Plaintiff cites to several cases to support its assertion that an employment relationship is not a prerequisite to bringing a KCRA claim. Yet the cases cited by Plaintiffs are distinguishable in that they recognize that a plaintiff may bring a retaliation claim against a person or entity that does not fit the statutory definition of employer (because, for example, it has fewer than the statutorily imposed number of employees to qualify as an "employer"), so long as that person or entity and the plaintiff are nonetheless in an employment relationship. *See Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000); *Lewis v. Quaker Chem. Corp.*, 229 F.3d 1152, *6 (6th Cir. Aug. 24, 2000) (unpublished table opinion); *Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 769–770 (E.D. Ky. 2013).

It is undisputed that Alexander was not an employee of Host; rather, he was Host's joint venture partner by reason of his ownership interest in CASS. (Alexander Dep., DN 40-10, 187:9–23).[7] Plaintiffs have not presented the court with any instances in which a court has applied the retaliation provisions of KRS § 344.280 to business partners like Host and Alexander who were not otherwise in an employer–employee relationship. Absent evidence of an

---

[7] In his deposition, Alexander testified as follows:

    A:    I am not an employee of Host.

    Q:    And you've never been an employee of Host, correct?

    A:    Well, let me—not to my knowledge. I mean, I've always been a partner with Host. I don't know if Host considered me an employee. But I've always been a partner of Host.

    Q:    Did you ever receive any kind of employee benefits from Host?

    A:    No.

(Alexander Dep., DN 40-10, 187:14–23).

employment relationship between Host and Alexander, Plaintiffs' claim for violation of the KCRA must fail. Accordingly, Host is entitled to summary judgment on Counts VI and VII.

**F. Count VIII: Punitive Damages Against Host, George Tinsley, and TFC**

Plaintiffs also assert a claim for punitive damages, which is set forth as a separate cause of action. However, a claim for punitive damages is not a separate cause of action, but an available remedy. *See, e.g.*, *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 548 n.1 (E.D. Ky. 2011). Moreover, a claim for punitive damages must fail where, as in the present action, there has been a "failure to assert a claim on which actual damages can be awarded[.]" *Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. 2002). As there is no basis on which Plaintiffs may recover actual damages, Plaintiffs' claim for punitive damages must be dismissed.

**IV.**

For the reasons set forth herein, Defendants' motion for summary judgment (DN 40) will be granted as to all counts of the Supplemental and Amended Complaint (DN 1-10). A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing this action with prejudice.

August 12, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**